**No. 3467**

**Second Circuit**

## ANTLEY v. LA. CENTRAL LUMBER CO.

(May 8, 1929. Opinion and Decree.)

A. Leonard Allen, of Winnfield, and Julius T. Long, of Shreveport, attorneys for plaintiff, appellee.

Thornton, Gist and Richey, of Alexandria, attorneys for defendant, appellant.

ODOM, J. This suit is brought under the Workmen's Compensation Act (Act No. 20 of 1914, as amended) plaintiff alleging that while at work for the defendant company he received an accidental injury which has totally and permanently disabled him from performing labor of a reasonable character, and he asks for compensation for 400 weeks. Specifically, he alleges that while at work a piece of iron piping struck him on the back near the region of the kidneys, knocking him unconscious, and causing his kidneys to pass blood; that he suffers constant pain as a result of the blow, which tore and injured the muscles of his back and hips.

Defendant, in answer, admitted the employment, and further, that plaintiff was injured, but only slightly, from which injury he soon recovered; and it especially alleged that within three days after the injury he went back to work in the same capacity and continued to work for more than three months, when he was discharged, but not on account of his incapacity to labor. In other words, that such injuries as plaintiff received were superficial and caused no disability except for a period of about three days.

There was judgment for plaintiff awarding compensation for 30 weeks, at $7 per week. Both parties appealed.

OPINION.

Plaintiff was employed by the defendant company as track foreman on a tramroad, and on the morning of July 11th, while engaged in filling a water keg at the tank, a piece of iron piping fell on his back, slightly to the right side in the region of the kidneys. The blow knocked him down and caused considerable shock and pain, but, with the assistance of bystanders, he was enabled to walk to his home. When he reached home, he took to his bed, where he remained for three days. A physician treated him immediately and found a contused wound on his back at the place where the piping struck him. He treated plaintiff by applying mercurochrome with gauze, and strapped it with adhesive tape. He saw the patient on the following day and possibly once later. He did not consider the wound serious, although painful.

Plaintiff resumed his labors on July 15th, three days after the accident, and continued to work regularly in the same capacity, that of track foreman on the tramroad, until the latter part of October or first part of November following, or more than three months, at the same wage which he had received prior to the accident.

During the latter part of October, or first of November, defendant discharged him, but not on account of his disability to work, but because plaintiff's family could not or did not get along with the families of other employees. In December or January, after he was discharged, plaintiff

hauled logs for seven days, and during the interim between the date on which he was discharged and the date of the trial, in September, 1928, he cleared two acres of land, with the assistance of his son one-half day, worked six weeks helping to unload and spread gravel, did some light work on a farm, and, on the day before the trial, picked 50 pounds of cotton. But plaintiff says that during all the time from the date of his injury his labor was accompanied by pain and that he worked under stress, and that he is not now able to do work of a reasonable character.

As against the testimony of plaintiff that he was not able to work since the accident, it is proved beyond question that he did, on the third day after the injury, resume his work in the same capacity as before, and that he continued to work at the same wage until he was discharged some three months later. Plaintiff testified that during this period he complained, and that he was for some time under treatment of local physicians, Drs. Joyner and Mecom. But both of these physicians testified that plaintiff asked for no treatment and was given none after he resumed his work, and that they heard no further complaints from him. Both of these physicians testified, however, that after he was discharged, plaintiff went back to them complaining that he was not well, and Dr. Mecom says that plaintiff told him that if the company did not reinstate him as track foreman he would get a lawyer and see what he could get for the injury. A. W. Johnson, assistant general manager of the defendant company, testified that plaintiff went to him after he was discharged and told him he would like to have his job back, and—

"I told him Mr. Cooper had charge of that and he would have to see him about it, and he went on to say that unless he got his job back or a similar job—he didn't use those exact words, but words to that effect—he would have to take it up and get something for getting hurt."

Fussell, Martin, and Estis, all laborers, were called. Fussell, plaintiff's son-in-law, who was discharged at the same time, testified that plaintiff was able to do no work and also said that he had not seen him at work since the accident. In view of the admitted fact that plaintiff did work for more than three months, we are led to discredit this witness' testimony. Grady Martin testified that he worked on the same job and heard no complaint, and that plaintiff, after a few days, worked as well as he ever did. Estis says, and other witnesses corroborate him, that plaintiff had for several years been lame, stiff in his legs and hips, and says he heard no complaint from him, except two or three days after the accident, and then a day or two either before or after he was discharged. Plaintiff testified that subsequent to the date on which he was discharged, he moved to Sikes, where he was treated by two physicians, Drs. Parker and Stovall; but they were not called as witnesses. Dr. Joyner and Dr. Mecom both examined plaintiff about the time of the trial and said they saw no evidence of disability. Dr. Rand also testified for defendant. He examined plaintiff and also the X-rays made by Dr. Adair, and said he found evidence of arthritis, or inflammation of the bone, between two vertebræ three or four inches below the scar; that the spine is straight, that plaintiff stands "with a peculiar leaning forward"; that he "complains of tenderness over the right lumbar muscles, that may or may not be present. The X-ray shows the lumbar vertebræ to be in good condition, except the line between the fourth and fifth lumbar vertebræ is narrower than usual, and the

fifth lumbar vertebra is apparently fused to the sacrum bone, on which it rests. This is apparently a congenital condition." He said if the latter condition caused no trouble before the patient was grown, it would cause none later. Dr. Rand further testified that arthritis is usually brought about by some infection, either chronic or otherwise, such as tuberculosis or syphilis, and he could not say what caused it in this case.

On April 11, 1928, after the injury, plaintiff, at the suggestion of his attorney, was examined by Dr. Adair, who made radiographs of his body. His examination revealed that plaintiff had arthritis between the fourth and fifth lumbar vertebræ, sacralization of the fifth lumbar vertebra and a fracture of the right transverse process of the third vertebra. Dr. Adair said, however, that the sacralization was congenital, that is, that it had existed from birth, and that the fracture of the right transverse process which he found had healed.

As to the cause of the arthritis, he could not say. He said it might have been brought on by injury or by disease, but could not say which. His attention was called to the fact that plaintiff had for years previous to the injury had a peculiar walk or limp, such as he had at the time of the examination, and he said, if that were true, "I would think that he had had arthritis before the accident."

Dr. E. L. Sanderson, of Shreveport, examined the plaintiff on January 30, 1928, and before the trial viewed the radiographs made by Dr. Adair. At the expense of brevity, we quote the following from his testimony:

"A. * * * I expect that the man has had some peculiarity of walk all of his life but if he had as much peculiarity of walk as he has now before the accident, I would think that the arthritis was probably induced before the accident. I should expect this man to have had some peculiarity in his gait all his life but if it was proven that he had the same gait before the accident as now then I would feel like—in other words I would feel like coinciding in opinion with Dr. Adair."

And again:

"A. * * * I do not ever recall having seen an injured back that resulted in arthritis or that continued to get bad or to get worse but what you could find a focus of infection. It is the natural consequence that an injury to the back will get well just like any other injured part of the body if it were not for the fact that the muscles of the back are always on a strain, and if they are injured and you have this focus of infection anywhere in your body you develop this rheumatic tendency or arthritis or whatever you want to call it. And in this case I would certainly expect him to have bad teeth or a bad prostate or bad tonsils or something.

"Q. What are the probabilities of his getting better, having improved in his condition?

"A. If you could find the focus of infection that probably has aggravated the condition or made the thing possible and remove that the diseased process might be arrested. But the rigidity of the spine and pain on motion of the spine will continue unless the diseased process that is feeding toxins to this injury is removed. The chances are that the disease will spread. That is, the injured portion will spread to other points higher up the spine. That is the history of these cases."

As the condition of the sacro-iliac joint was not caused by the injury, and as the fracture of the transverse process had healed before the trial, these conditions are eliminated from the case, so that whatever disability plaintiff now has is brought about by arthritis; and we agree with the district judge that the testimony does not

warrant a holding that the arthritis was produced by the injury.

The district judge, in a written opinion which we find in the record, said:

"The sacralization of the fifth lumber vertebra—according to Dr. Adair's testimony, has existed since birth. The arthritis which the plaintiff suffers with to a large extent could be caused by infection or trauma and the lick the plaintiff suffered on the occasion of the accident was sufficient to cause the arthritis. He is borne out in this testimony by Dr. Sanderson, but these doctors admitted that if the plaintiff had an impediment in his walk prior to the accident that it was likely that he was suffering from arthritis before' the accident and that the accident had nothing to do with the arthritis. All the doctors for the defendant testified that the radiographs showed that the plaintiff is suffering from arthritis. The evidence in this case would clearly show that the plaintiff is suffering from the following troubles: Sacralization of the fifth lumbar vertebra, arthritis, and also a fracture of the right transverse process of the third lumbar vertebra, but the evidence is not sufficient to show that the arthritis and the sacralization was caused by the injury received by the plaintiff on July 11, 1927, but there is no reason to account for the fracture except from the injury received on the 11th."

The district judge thought that the fracture of the transverse process which was caused by the injury had not healed at the time plaintiff was discharged, and for that reason he thought he was entitled to some compensation. There is no testimony indicating when the fracture healed, and it will be conceded, we think, that if the said fracture produced disability, it was during the period immediately following the injury, and, as plaintiff registered no complaint during the three months immediately following the injury, but continued to work and draw wages as before, we do not think we are warranted in holding

that he was entitled to compensation thereafter. Plaintiff, by working and drawing wages following the accident and by failing to claim compensation for that period, has waived his rights to any claim which he might have had for that period.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be reversed, and that plaintiff's demands be rejected and his suit dismissed, at his costs.